**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**KRISTIN M. KINGREY**

   **Plaintiff,**

**v.**                  **Civil Action No:** <u>2:21-cv-00612</u>

**CHRISTINE WORMUTH, SECRETARY
OF THE DEPARTMENTOF THE ARMY;
FRANK KENDALL, SECRETARY OF
THE DEPARTMENT OF THE AIR FORCE**

   **Defendant.**

## COMPLAINT

  Plaintiff Kristen M. Kingrey, for her complaint against Defendants Christine Wormuth,

Secretary of the Department of the Army and Frank Kendall, Secretary of the Department of the

Air Force, alleges, by and through her counsel, as follows:

### INTRODUCTION:

  1.  For approximately 14 years, Technical Sergeant Kristin M. Kingrey has served

her county as a member of the Air National Guard. Despite her dedication to her country and the

National Guard, Kristen M. Kingrey has been subjected to continued harassment, discrimination,

and retaliation based upon her sex – including her sexual orientation and perceived gender

nonconformity.

  2.  In this case, Kristin M. Kingrey's employment was threatened by those in a

supervisory position. Kristin M. Kingrey was informed that her superior(s) and/or supervisor(s)

would not allow her career with the National Guard to advance unless she began conforming to

his vision of a female federal employee.

3.      Kristin M. Kingery was advised that her career would be negatively impacted unless she took steps to appear more feminine, including growing her hair to a longer length and wearing makeup.

4.      In 2020, this intentional and unlawful discrimination culminated in two adverse employment actions against Kristin M. Kingrey including the recission of a position for which she had previously been hired and refusal to hire her for a position she was qualified for – despite her satisfactory performance as a federal employee.

5.      Upon execution of these adverse employment decisions, Kristin M. Kingrey exercised her right and obligation by filing an Equal Employment Opportunity Complaint. As a result of filing her EEO Complaint, Kristin M. Kingrey was notified that she was now the subject of an internal investigation by the National Guard and was issued a negative performance appraisal.

6.      As a member of one or more protected classes who has been subjected to unlawful employment practices and decisions – including harassment, discrimination, and retaliation – Kristin M. Kingrey (hereinafter "Plaintiff Kingrey") files suit against Defendants Christine Wormuth, Secretary of the Department of the Army and Frank Kendall, Secretary of the Department of the Air Force for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII").

**PARTIES**

7.      Plaintiff Kingrey is – and during all relevant times was – a resident of Kanawha County, West Virginia, a citizen of the United States, and an employee of Defendant(s).

8.     Plaintiff Kingrey is – and during all relevant times was – a dual status technician with the West Virginia Army National Guard, the Department of the Army and/or Department of the Air Force.

9.     As a dual status technician, Plaintiff Kingrey serves as a federal employee in a civilian position with the National Guard, Department of the Army and/or Department of the Air Force.

10.     As a dual status technician, Plaintiff Kingrey is employed with the Department of the Air Force as an Air Transportation Craftsman and as an HRO Benefits Specialist – a position funded by the Department of the Army and/or Department of the Air Force.

11.     Plaintiff Kingrey's HRO Benefits Specialist position is a civilian position within the federal government and results in Plaintiff Kingrey's categorization as a federal employee.

12.     Plaintiff Kingrey is a female employee who identifies as a lesbian.

13.     Based upon her outward appearance, Plaintiff is often perceived as masculine.

14.     Due to her perceived masculinity, others – including her supervisor(s) and superior(s) – perceive Plaintiff as being gender nonconforming.

15.     Her appearance often leads others – including her supervisor(s) and superior(s) – to surmise that Plaintiff is a lesbian.

16.     Plaintiff is a "person" and "employee" as defined by Title VII.

17.     Defendant Frank Kendall is the Secretary of the Department of the Air Force and is being sued only in his official capacity.

18.     Defendant Christine Wormuth is the Secretary of the Department of the Army and is being sued only in her official capacity.

**JURISDICTION AND VENUE**

18.     This Court has jurisdiction over the subject matter of this complaint pursuant to

28 U.S.C. § 1331 as this is an action arising under the laws of the United States, specifically Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq. See also* 42 U.S.C. § 2000e-

5(f)(3) asserting that District Courts have jurisdiction over Title VII actions.

19.     This Court has jurisdiction over this Title VII action as Plaintiff Kingrey has

received the Final Agency Decision and – within 90 days of receiving the final decision – opted

to, and did file, this litigation in the District Court against the proper Defendant(s) identified

therein.

20.     Venue in this District is appropriate pursuant to 28 U.S.C. §§ 1391(b) and 1391

(c), as Defendants have extensive and deliberate contacts in this District, including physical

presence in the jurisdiction through the Air National Guard Base in Charleston, Kanawha

County, West Virginia and Army National Guard Office(s) located in Charleston, Kanawha

County, West Virginia.

21.     Additionally, venue is proper as the unlawful employment practice(s) of

Defendants occurred in this judicial district; relevant employment records, policies, and

procedures are maintained in this jurisdiction; and but for the unlawful employment practice(s)

of Defendants, Plaintiff Kingrey would have obtained a permanent position working in this

judicial district. *See* 42 U.S.C. § 2000e-5(f)(3).

**FACTS:**

22.     Plaintiff Kingrey began working as a T-32 drill-status guardsman for the Air

National Guard in September of 2007 and began employment as a federal civilian employee for

the National Guard in April of 2016.

23.     In August of 2018, Plaintiff Kingrey was deployed to Qatar where she served her country until March 2019.

24.     On or about December 16, 2018 – while in Qatar – Plaintiff Kingrey applied for the position of Human Resource Specialist (Human Resource Development) (HRDS) GS-0201-11 (hereinafter "HRDS position").

25.     The HRDS position was a civilian position which was further defined or characterized as being definite (permanent) in nature.

26.     Plaintiff Kingrey's then-current position as HRO Benefits Specialist was defined and/or characterized as indefinite – and thus temporary in nature.

27.     On or about December 26, 2018, Plaintiff Kingrey was certified by USA Staffing as a grade level GS-0201-11/12 for the HRDS position.

28.     Plaintiff Kingrey was remotely interviewed for the HRDS position on or about January 7, 2019.

29.     On the same date she initially interviewed, Plaintiff Kingerey was contacted by the interview panel – led by Lieutenant Colonel Kelly Ambrose – and informed that she had been selected for the HRDS position.

30.     Plaintiff Kingrey was one of two employees – both female – who applied and were interviewed for the HRDS position.

31.     On the same date she was offered the HRDS position, Plaintiff Kingrey accepted.

32.     From January 2019 until March 2019 – while deployed – Plaintiff Kingrey began completing paperwork to begin training for the HRDS position.

33.     Upon returning to Charleston, West Virginia from Qatar, Plaintiff Kingrey was placed on T10 MedCon orders, due to an injury.

34.     Upon returning to Charleston, West Virginia, Plaintiff Kingrey received training for the HRDS position.

35.     In April of 2019, Plaintiff Kingrey remained unable to assume her new HRDS position due to ongoing medical restrictions.

36.     However, as per regulations and policy, the HRDS position could be temporarily filled but – upon release from medical restrictions – Plaintiff Kingrey was to begin serving in the HRDS position.

37.     When Plaintiff Kingrey returned from Qatar, Lieutenant Colonel Ambrose informed her that Vice Wing Commander, Colonel Michael Cadle, had made negative, disparaging, and intentionally discriminatory remarks about Plaintiff Kingrey which were centered on her sex – including her sexual orientation and perceived gender nonconformity.

38.     Prior to Plaintiff Kingrey's return from Qatar, Colonel Cadle had requested a meeting with Lieutenant Colonel Ambrose.

39.     During this meeting, Colonel Cadle made it a point to focus the conversation on Plaintiff Kingrey and to make inappropriate, disparaging, and intentionally discriminatory comments about Plaintiff Kingrey's appearance.

40.     Plaintiff Kingrey is tall and broad in stature. She keeps her hair short in length and does not don make-up or jewelry.

41.     During his meeting with Lieutenant Colonel Ambrose, Colonel Cadle noted Plaintiff Kingrey's masculine features and requested and/or instructed Lieutenant Colonel Ambrose to counsel Plaintiff Kingrey on how to appear more feminine.

42.     During this meeting, Colonel Cadle threatened that Plaintiff Kingrey's career advancement with the National Guard, Department of the Air Force, and/or Department of the

Army would suffer unless Plaintiff Kingrey began taking steps to make herself appear more feminine.

43.     Colonel Cadle instructed Lieutenant Colonel Ambrose to counsel and encourage Plaintiff Kingrey to grow her hair, begin using makeup, and to ultimately appear more feminine.

44.     These inappropriate comments by Colonel Cadle – Plaintiff Kingrey's supervisor, superior, and the Interim Head of the HRO (the ultimate decision-maker for hiring within the HRO) – were based on Plaintiff's sex – including her sexual orientation and perceived gender-nonconformity.

45.     Plaintiff Kingrey's appearance is and was perceived by Colonel Cadle – and numerous others within the Department of the Air Force and/or Department of the Army – as the result of and/or being based on Plaintiff Kingrey's sexual orientation and/or gender nonconformity.

46.     During the time he served as Vice Wing Commander and/or Director of Joint Staff, Colonel Cadle would frequently visit Joint Force Headquarters to discuss manning (hiring) for his wing and/or his office.

47.     Colonel Cadle was actively involved in the hiring decisions during his time as Vice Wing Commander and/or Director of Joint Staff.

48.     In addition to these improper comments, Plaintiff Kingrey is and was frequently harassed for the length of her hair. Specifically, that her hair was allegedly too short for the regulations governing women's hair.

49.     Due to the volume of complaints about the length of her hair, Plaintiff Kingrey began, and continues to, carry the appropriate Air Force Instruction on her person in order to

demonstrate that her hair is and was of an appropriate length and did not/does not amount to a violation.

50.     Additionally, Plaintiff Kingrey faced harassment and discrimination based upon her sex – including instances where she was forced to "try on" a women's Honor Guard jacket, in front of others, to confirm that none of the women's sizes would fit.

51.     Other instances of discrimination and harassment include colleagues and superiors perpetuating the rumor that Plaintiff Kingrey was "transitioning" from female to male.

52.     A female Master Sgt. and First Sgt., a superior, was believed to have stated and/or perpetuate this rumor.

53.     Instead of dealing with these comments in an appropriate manner by obtaining a mediator – as contemplated by the regulations and policies – Colonel Cadle directed Plaintiff Kingrey to work it out with the First Sergeant.

54.     During his ill-conceived effort to resolve the issue Plaintiff Kingrey was experiencing with regard to the above rumor, Colonel Cadle asked Plaintiff Kingrey if she had ever been involved in a romantic relationship with the First Sgt, who also identifies as a lesbian – insinuating that the disagreement(s) Plaintiff Kingrey was having with the First Sgt. must be from and/or motivated by a prior intimate relationship as opposed to the First Sgt.'s inappropriate, and discriminatory, comment(s).

55.     From this inappropriate comment, it is clear that Colonel Cadle was aware of Plaintiff Kingrey's sexual orientation – or at the very least perceived Plaintiff Kingrey as a gender nonconforming lesbian as early as 2016.

56.     Plaintiff Kingrey had attempted to endure and tolerate these discriminatory acts and comments; however, upon receiving adverse employment decision(s) based upon her sex, Plaintiff Kingrey filed an EEO Complaint in October of 2020.

57.     Plaintiff Kingrey's complaint was based upon the recission of her HRDS position and the decision to hire someone outside the protected class for the employee benefits position, despite Plaintiff Kingrey's qualifications.

58.     In February of 2020, the paperwork was completed for Plaintiff Kingrey to begin her HRDS position.

59.     However, in the spring of 2020, Plaintiff Kingrey received a phone call from Lieutenant Colonel Board informing her that the Army had pulled the funding for the HRDS position.

60.     Plaintiff Kingrey was notified that the HRDS position was being pulled and that she would not begin work in this position.

61.     Despite the recission of her position, and assertions that funding and the budget were to blame, within months the HRDS position had been reposted.

62.     As evidenced by the reposting of the HRDS position, the Department of the Army was not experiencing any budgetary concerns at the time Plaintiff Kingrey was notified that the Defendants would not be honoring her hiring for HRDS position.

63.     Additionally, as the HRDS position had been contained within the budget, it is unclear how – two quarters into 2020 – it was determined that funding no longer existed for this position, which was clearly contemplated within the 2020-2021 budget.

64.     Seemingly in acknowledgment that their "budgetary" claims were pretextual and without merit, Defendants fall back on the claim that the necessary forms for hiring Plaintiff Kingrey were never completed.

65.     This argument is also without merit. First, Lieutenant Colonel Ambrose had full signatory authority for hiring this position within the HRO.

66.     Second, Plaintiff Kingry had accepted the HRDS position in January of 2019. As Defendants are aware, Plaintiff's designation could not be changed at that time to reflect her new HRDS position as she was still deployed and subsequently on MedCon orders.

67.     Despite previously being hired for the HRDS position – nearly 18 months prior – Plaintiff Kingrey was never notified that the HDRS position was being reposted.

68.     After being reposted, the HRDS position was filled by a person outside the protected class.

69.     Despite the findings within the Final Agency Decision, Colonel Cadle did have supervisory authority over Plaintiff Kingrey at the time she was offered and accepted the HRDS position – as well as during the recission of this position.

70.     Following the improper recission of the HRDS position, in September of 2020 Plaintiff Kingrey applied for an HR Specialist position (Employee Benefits) within the HRO (hereinafter referred to "Employee Benefits Position").

71.     Plaintiff Kingrey certified for the employee benefits position at the grade level GS-11/12.

72.     Plaintiff Kingrey had received prior training(s) relevant for the employee benefits position within the HRO.

73.     However, Plaintiff Kingrey was notified that – despite her experience and training – she had not been selected for the employee benefits position.

74.     And while Plaintiff Kingrey is a veteran employee, the individual who was ultimately selected for the employee benefits position was a non-veteran employee who is outside the protected class.

75.     While Colonel Cadle denied that he had any decision-making authority over either the HRDS or employee benefits positions, Colonel Cadle's role – both current and former – with the Defendants provided him authority over the chain of Plaintiff Kingrey's command.

76.     Although Colonel Cadle was not her direct supervisor, he exercised authority and supervision over Plaintiff Kingrey.

77.     Colonel Cadle had previously dealt – ineffectively and improperly – with Plaintiff Kingrey's complaints regarding her gender (non-conformity) and sexual orientation.

78.     Further, Colonel Cadle served as the Interim Head of HRO, the Human Resource Department within the Joint Force Headquarters.

79.     Thus, Colonel Cadle exercised supervisory authority and control over all those federal civilian employees – including Plaintiff Kingrey.

80.     Therefore, the individual(s) who rescinded Plaintiff Kingrey's HRDS position – including Lieutenant Colonel Board – and those on the panel for hiring the employee benefits position are and/or were supervised, directed, instructed, and/or managed by Colonel Cadle.

81.     In October of 2020, ss a result of the intentional, unlawful, discrimination and harassment she suffered when the above adverse employment decisions were made/taken, Plaintiff Kingrey filed an EEO Complaint.

82.     On June 11, 2021, Plaintiff Kingrey learned, via letter, that the Defendants had rejected her complaint of discrimination.

83.     On July 9, 2021, Plaintiff Kingrey requested a Final Agency Decision ("FAD"), which was issued on August 25, 2021.

84.     As her October 2020 EEO complaint was being "investigated" Plaintiff Kingrey was notified that she was now the subject of an investigation into alleged fraternization.

85.     Of note, following the initiation of the initial "investigation" by the National Guard, Plaintiff Kingrey's primary witness – Lieutenant Colonel Ambrose – was also subject(ed) to a fraternization investigation.

86.     Following the initiation of the initiation "investigation" of Plaintiff Kingrey's October 2020 Complaint, other favorable witness(es) for Plaintiff Kingrey were contacted and made to feel threatened.

87.     During the now parallel investigations – Plaintiff Kingrey's sexual discrimination complaint and the fraternization investigation(s) – Plaintiff Kingrey was provided with her first negative performance appraisal.

88.     The retaliatory actions of the Defendants resulted in a bias Final Agency Decision which fails and/or outright refuses to acknowledge the intentional, unlawful, discrimination and the supervisory authority Colonel Cadle held/holds over all those within the HRO – including Plaintiff Kingrey, her supervisor(s) and supervisor(s), and those with decision-making authority over the HRDS and employee benefits positions.

**COUNT I**
**Title VII 42 U.S.C. § 2000e, *et seq.***

89.     Plaintiff Kingrey hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

90.     Plaintiff Kingrey is a female, lesbian, member of the Air National Guard. Plaintiff Kingrey's appearance is often perceived as masculine in nature.

91.     The HRDS and employee benefits positions were funded by the Department of the Army and/or the Department of the Air Force.

92.     The HRDS and employee benefits positions are and/or were civilian positions with the federal government.

93.     Plaintiff Kingrey's employer, the Department of the Air Force and/or Department of the Army, was to provide employment free from any discrimination on the basis of sex. 42 U.S.C. § 2000e *et seq.*

94.     Pursuant to Supreme Court precedent, sex discrimination includes discrimination on the basis of sexual orientation and/or perceived nonconformity with gender norms.

95.     Pursuant to Title VII, it is unlawful for any employer to fail or refuse to hire, to discharge, or otherwise discriminate against any individual on the basis of sex. 42 U.S.C. § 2000e *et. seq.* The *McDonnell Douglas* framework was "not intended to be an inflexible rule." *Young v. United Parcel Serv., Inc*., 575 U.S. 206, 135 S. Ct. 1338, 1353, 191 L. Ed. 2d 279 (2015) *(quoting Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 575, 98 S. Ct. 2943 (1978)).

96.     A Plaintiff may establish a prima facie case of discrimination by "'showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under" Title VII." *Young v. United Parcel Serv., Inc*., 575 U.S. 206, 135 S. Ct. 1338, 1353, 191 L. Ed. 2d 279 (2015) *(quoting Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S. Ct. 2943 (1978)).

13

97.     Plaintiff Kingrey is a member of the protected class as she is a female who identifies as a lesbian and her appearance is perceived to be gender nonconforming.

98.     As stated from the facts above, Colonel Cadle was serving as the Director of Joint Staff and Interim Head of HRO at the time Plaintiff Kingrey's HRDS position was rescinded.

99.     The Defendant(s)' failure and/or refusal to honor the hiring decision as to the HRDS position is an adverse employment decision and a form of intentional, unlawful, discrimination as it affects Plaintiff Kingrey's compensation, privileges, and terms and/or conditions of her employment.

100.    The decision to rescind the job posting for the HRDS position was made intentionally by, influenced by, directed, and/or approved by Colonel Cadle.

101.    Thus, Colonel Cadle followed through on his direct threat that, unless she began appearing more feminine, Plaintiff Kingrey's career progress would be adversely affected.

102.    Additionally, it is and was intentional and unlawful for the Defendant(s) to fail and/or refuse to hire Plaintiff Kingrey for the employee benefits position.

103.    After returning from her deployment – and without modifying her appearance to conform to her superior's vision of a lesbian – Plaintiff Kingrey was notified that she would not assume the duties of her HRDS position.

104.    Plaintiff Kingrey was qualified for this position – as she was interviewed and hired to perform the same – therefore, her performance is and would have been satisfactory.

105.    Plaintiff Kingrey's prior job performance in her dual technician position was – and until the retaliatory act(s) to be discussed below – satisfactory.

106     Despite assertions that the HRDS position was eliminated due to loss of Army funding, the Army posted – and funded – multiple positions during the time when funding was allegedly pulled for Plaintiff Kingrey's HRDS position.

107.    Additionally, this HRDS position was reposted within months of Kingrey's notification that she could not begin work in this position.

108.    At the time Kingrey's position was pulled out from under her, Colonel Cadle was serving as the Interim Head of the HRO Department.

109.    As stated above, Colonel Cadle – and Defendant(s)' – decision-making was motivated and caused by Plaintiff Kingrey's sex, including her sexual orientation and perceived gender nonconformity.

110.    Plaintiff Kingrey interviewed, was selected, and hired for the HRDS position. This HRDS position was "definite" in nature.

111.    As a result of the intentional and unlawful discrimination Plaintiff Kingrey was subjected to, she remains an indefinite employee – meaning that her employment remains temporary in nature.

112.    The circumstances under which the adverse action – eliminating the position for which Plaintiff Kingrey had been hired and subsequently reposting to hire a straight male employee – gives rise to the inference of intentional, unlawful, discrimination.

113.    Thus, Defendants discriminated against Plaintiff Kingrey on the basis of her sex – including her sexual orientation and perceived gender nonconformity – by eliminating a position which Plaintiff Kingrey had already been selected – and hired – nearly 18 months after her initial acceptance.

114.     In addition to the rescission of her HRDS position, Plaintiff Kingrey was further intentionally discriminated against in regard to the hiring decisions for the employee benefits position.

115.     Plaintiff Kingrey applied for the employee benefits position based upon a "by-name" request.

116.     The "by-name" request occurred after an individual outside the protected class was selected for the HRDS position – upon its reposting.

117.     Plaintiff Kingrey had experience working in the same or similar position and had received training(s) the applicant selected had not received.

118.     The applicant selected for the employee benefits position is not a lesbian; rather, their sexual orientation is heterosexual.

119.     The applicant selected for the employee benefits position is not perceived to be homosexual based upon gender nonconformity.

120.     At the time – or immediately prior to the time – Plaintiff Kingrey was not selected for the employee benefits position in HRO, Colonel Cadle served and/or had served as Interim Head of the HRO Department and supervised those within the office.

121.     Colonel Cadle had input and influence into decision-making both within and outside the HRO.

122.     The hiring decision for the employee benefits position was influenced by, directed by, and/or approved by Colonel Cadle.

123.     Colonel Cadle, and the Defendants, delivered on his threat of hindering Plaintiff Kingrey's progression and career advancement based upon her sex – including her sexual orientation and perceived gender nonconformity.

124.    The above-described acts constutite(d) unlawful, intentional discrimination on the basis of Plaintiff Kingrey's sex – including her sexual orientation and perceived gender nonconformity.

125.    Plaintiff Kingrey is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to injunctive relief, pre-judgment and post-judgment interest, back pay, compensatory damages, reasonable costs and attorneys' fees, and any other equitable relief as the court deems appropriate.

## COUNT II
### Title VII 42 U.S.C. § 2000e, *et seq.* Retaliation

126.    Plaintiff Kingrey hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

127.    Title VII prohibits retaliation against an employee for opposing any practice made unlawful by Title VII or for asserting a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. 42. U.S.C. § 2000e-3(a).

128.    To establish a prima facie case of retaliation, a plaintiff must show (1) that she engaged in protected activity under Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Roberts v. Glenn Industrial Group, Inc.,* 998 F.3d 111, 122, (4th Cir. 2021).

129.    Plaintiff Kingrey engaged in protected activity under Title VII as she filed an EEO Complaint asserting a charge for discrimination and participated in the investigative process and proceeding(s).

130.    Plaintiff Kingrey was intentionally subjected to an unlawful adverse employment action in the form of a negative performance appraisal.

131.     Further, Plaintiff Kingrey – a civilian and subordinate – was, and is currently being, subjected to an investigation based upon alleged fraternization.

132.     Despite beginning their initial investigation into Plaintiff Kingrey's complaint(s) in October of 2020, Defendants delayed providing a Final Agency Decision until August 25, 2021.

133.     This unnecessary delay was motivated by a desire to discredit Plaintiff Kingrey – and any favorable witness(es) – by lodging independent complaints and/or allegations against Plaintiff Kingrey and her witness(es).

134.     But for Plaintiff Kingrey's EEO complaint, she would not have been subjected to an unfounded – and unprecedented – investigation into alleged fraternization.

135.     But for her EEO Complaint, Plaintiff Kingrey would not have been subjected to a negative performance appraisal.

136.     The above-described acts constitute(d) unlawful, intentional discrimination on the basis of Plaintiff Kingrey's sex – including her sexual orientation and perceived gender nonconformity.

137.     Plaintiff Kingrey is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to injunctive relief, pre-judgment and post-judgment interest, back pay, compensatory damages, reasonable costs and attorneys' fees, and any other equitable relief as the court deems appropriate.

### PRAYER FOR RELIEF:

Wherefore, Plaintiff Kristin M. Kingrey requests the following relief:

a.     Trial by jury on all issues;

b.     Reinstatement or appointment to the HRDS position;

  c.  Appointment to the employee benefits position;

  d.  Compensatory damages;

  e.  Back pay;

  f.  Pre- and/or post-judgment interest at the maximum allowable rates at law;

  g.  Attorneys' fees and costs;

  h.  all other equitable relief available by statute or common law.

Plaintiff Kristin M. Kingrey reiterates her demand for trial by jury on all issues so triable.


Dated: November 23, 2021       **Kristin M. Kingrey**
                  **By Counsel**.


                 /s/ Michael B. Hissam
                 Michael B. Hissam (WVSB #11526)
                 Kayla S. Reynolds (WVSB #13268)
                 HISSAM FORMAN DONOVAN RITCHIE PLLC
                 P.O. Box 3983
                 Charleston, WV 25339
                 681-265-3802 *office*
                 304-982-8056 *fax*
                 mhissam@hfdrlaw.com
                 kreynolds@hfdrlaw.com