**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

KRISTIN M. KINGREY,

     Plaintiff,

v.                           Civil Action No. 2:21-cv-00612

CHRISTINE WORMUTH, SECRETARY
OF THE DEPARTMENT OF THE ARMY;
FRANK KENDALL, SECRETARY OF
THE DEPARTMENT OF THE AIR FORCE

     Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Introduction

Plaintiff Kristin Kingrey, currently a Master Sergeant and T-32 Dual Status Technician in the West Virginia National Guard ("WVNG"), claims that she was discriminated against based on her sexual orientation as a lesbian. She alleges that she was discriminated against based on her sexual orientation because (1) she did not receive a Human Resource Specialist (Human Resource Development) position;[1] (2) she did not receive a Human Resources Specialist (Employee Benefits) position;[2] (3) Brigadier General Michael Cadle (Brig. Gen. Cadle) made certain comments to Lieutenant Colonel Kelly Ambrose (LTC Ambrose) in 2018 that Plaintiff needed to appear more feminine to be able to advance in the WVNG; (4) certain other members of the WVNG made derogatory comments about her based on her sexual orientation; and (5) she has been subject to retaliation because she filed an EEO complaint and is now the subject of

---

[1] Hereinafter referred to as the HRD position.
[2] Hereinafter referred to as the Employee Benefits position.

fraternization (inappropriate relationship) military investigation. Plaintiff's claims are based on Title VII of the Civil Rights Act of 1964. *See* ECF No. 1.

The Defendants contend that Plaintiff's claims of discrimination are without merit and should be dismissed. Specifically, the Defendants contend: (1) this Court is without subject matter jurisdiction over the Plaintiff's claims the Plaintiff's claims because Title VII does not apply to the Plaintiff since she is a uniformed member of the military; (2) this court lacks subject matter jurisdiction because Plaintiff's claims are nonjusticiable under the intra-military immunity doctrine set forth in *Feres v. United States*, 340 U.S. 135 (1950); (3) even if Title VII was applicable to the Plaintiff's claims this Court lacks subject matter jurisdiction over some of Plaintiff's clams which were not contained in her EEO complaint; (4) even if Title VII applied to the Plaintiff's claims, the Plaintiff has failed to prove that she has been subject to adverse employment action due to discrimination.

### B.     Plaintiff's Claims

### 1.     The HRD Position

In December of 2018, Plaintiff applied for the HRD position while she was on active duty in Qatar and was interviewed by telephone in January 2019. As advertised, the position was a permanent position as opposed to an indefinite position.[3] Plaintiff claims she was informed by LTC Ambrose after the interview that she had been selected for the position. However, LTC Ambrose never completed the process for awarding the position to the Plaintiff. LTC Ambrose never completed and signed a WV HRO Form 301 (Form 301), and a U.S. Office of Personnel

---

[3]Employees holding permanent positions have more employee rights, particularly in situations involving reductions in force. Employees in indefinite positions are the first employees to be subject to reductions in force. In addition, permanent employees have more impact on military budgets than indefinite employees.

2

Management Standard Form 52, Request For Personnel Action (SF 52), was never approved by the head of the agency. These processes were required to be completed before a successful applicant could be notified that he or she had received a position, and the position is not considered to be awarded until those processes have been completed. In this case, LTC Ambrose improperly notified the Plaintiff that she had been awarded the position because her selection had not been approved by the head of the agency and the necessary processes for the approval had not been completed. *See* Exhibits B; G; K (pp. 10, 19, 23-25, 32-33).

The HRD position remained vacant and went unfilled while Plaintiff was off on medical convalescence orders. Due to budgetary concerns, the WVNG decided to change the HRD position from a permanent position to an indefinite position. This change from a permanent position to an indefinite position required that the position be re-advertised. Plaintiff had not returned to duty because she had experienced a knee injury in Qatar and was on an active medical hold from March 20, 2019 to April 18, 2019, and then on medical continuation orders from April 19, 2019, to December 4, 2020. Lieutenant Colonel Chad Board (Lt. Col. Board)1, Deputy Human Resources Officer, informed Plaintiff in the spring of 2020 that due to budgetary concerns that the position had not been filled due to funding (budget) concerns and would be re-advertised. The position was subsequently re-advertised as an indefinite position. However, Plaintiff never applied for the position.[4] Plaintiff's sexual orientation played no role in the decision to readvertise the HRD position. In addition, then Colonel Michael Cadle (now Brig. Gen. Cadle) played no role in the readvertising process and had no input regarding the change in the HRD position from a permanent to an indefinite position. *See* Exhibits A, B; G; J (pp. 23-25); L pp. 70-71).

---

[4]Positions in the WVNG are advertised in an email distribution by the WVNG to all of its employees (the "distro") and in USA Jobs. *See* Exhibits J (pp. 25-26, 31, 42); K (pp. 11-12).

2. **The Employee Benefits Position**

The Employees Benefits Position was advertised in 2020. Seventeen candidates, including the Plaintiff, were interviewed for the position.[5] Three experienced human resources employees served as the interview panel and conducted interviews of all 17 candidates. Interview questions were developed and asked of all of the interviewed candidates. The interview used a point system to rank the candidates, and the candidates were evaluated based on their education, competency, qualifications, work history/dependability, and their answers to questions during the interviews. The Plaintiff ranked fourth out of all 17 candidates interviewed. She did not perform as well as some of the other candidates in the interview process, and she answered some questions incorrectly according to the interview panel. According to the interview panel, the successful candidate selected for the position had superior knowledge on the subject matter, a better skillset to perform the job, and was familiar with the systems required for the position. The successful candidate selected for the position was the unanimous choice of the interview panel. All of the interview panel members stated that they were not influenced in any way making their recommendation for selection and that Brig. Gen. Cadle played no role in the interview or selection process. Brig. Gen. Cadle approved the recommendation by the selecting supervisor but played no other role in the selection process. The interview panel has indicated that neither Plaintiff's sexual orientation nor the sexual orientation of any of the other candidates interviewed played any role in the selection process for the Employee Benefits Position. *See* Exhibits A; B; C; D; E; G; K (pp. 33-35); L (pp. 70-71); N; O.

---

[5] Lt. Col. Board had requested an in-person interview for this position for the Plaintiff to make sure that she would be interviewed. However, the Plaintiff made the certificate of qualified candidates, and the decision was made to interview all of the 17 candidates.

### 3.      Alleged Comments By Brig. Gen. Cadle

Plaintiff has alleged that she was informed by LTC Ambrose that she had met Brig. Gen.

Cadle for lunch in December 2018. According to Plaintiff, LTC Ambrose informed her that Brig.

Gen. Cadle had indicated that he wanted LTC Ambrose to mentor her to grow her hair longer and

wear makeup to appear more feminine or that her career progression would be hurt. LTC Ambrose

informed Plaintiff about these comments in April of 2019. Brig. Gen. Cadle has denied these

accusations. No one witnessed these alleged statements. There is also no evidence that even if

these comments were made, which the Defendants deny, that these comments have caused any

adverse employment action with regard to the Plaintiff. *See* ECF No. 1; Exhibits A; G; L (pp. 47-

48).

### 4.      Performance Evaluation

Plaintiff claims that she should have received a better performance evaluation on June 10,

2021. She had been rated by her supervisor, CMSgt Michael Powell, on that date. She received

one outstanding rating, and two fully successful ratings for an overall fully successful rating. t.

Col. Board signed the evaluation as the higher level reviewer. There is no indication in that

evaluation that her work was unacceptable or that she was rated unacceptable. This claim is not

part of her EEO complaint, and Plaintiff has no evidence to show that this evaluation was based

on discrimination. *See also* Exhibits E; F; G; J (p. 75); M; N.

### 5.      Plaintiff's Service Dress Uniform

Plaintiff claims sexual discrimination and harassment because she was required to wear a

female dress blue jacket.   Due to her build, Plaintiff instead wore a male dress blue jacket when

she was part of an honor guard team. However, females were not permitted to wear male jackets

pursuant to Air Force instruction.   Brig. Gen. Cadle, upon learning of the problem, made arrangements to have a female dress blue jacket tailored to fit Plaintiff. Such action was to ensure Plaintiff's compliance with Air Force instruction. There is no evidence that the incident regarding the Dress Blue jacket resulted in any adverse employment action with regard to the Plaintiff. *See* ECF No. 1. *See also* Exhibits A; J (pp. 45-48).

6.      **Miscellaneous Comments By Other Members Of The West Virginia National Guard**

Plaintiff also alleges that she heard comments from other members of the WVNG that she was "transitioning, " about the length of her hair, and various other comments relating to her sexual orientation. Many of these claims were not part of her EEO complaint. There is no evidence that any of these allegations resulted in any adverse employment action with regard to the Plaintiff. Plaintiff never filed any EEO complaints regarding these comments when they allegedly occurred in 2016 to 2018.   Her hair length and appearance were subject to a military rule, AFI 36-2903. *See* ECF No. 1. *See also* Exhibits A; J (p. 44); L (pp. 47-48).

7.      **Fraternization Investigation**

Plaintiff has also claimed retaliation due to a fraternization investigation involving her inappropriate relationship with LTC Ambrose. This allegation is not part of her EEO Complaint. In addition, this is a military investigation which would be outside the scope of Title VII. *See* Article 134 of the Uniform Code of Military Justice; W.Va. Code §15-1E-134. Brig. Gen. Cadle has had no role in this investigation. *See* ECF No. 1. *See also* Exhibits F; G; I; J (p. 55); L (pp. 69-70); M.

6

## II. PLAINTIFF'S CLAIMS ASSERTED UNDER TITLE VII MUST BE DISMISSED BECAUSE THE UNITED STATES HAS NOT WAIVED ITS SOVEREIGN IMMUNITY TO ALLOW SUCH CLAIMS TO BE ASSERTED BY UNIFORMED MEMBERS OF THE MILITARY

Under federal law, "[w]aivers of sovereign immunity must be unequivocal and are to be strictly construed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). Federal law has "well established that the United States may not be sued without its consent and that its consent must be unequivocally manifested in the text of a statute." *Williams v. United States*, 242 F.3d 169, 172 (4th Cir. 2001), *citing Lane v. Pena*, 518 U.S. 187, 192 (1996). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of scope, in favor of the sovereign." *Lane*, 518 U.S. at 192. The Supreme Court has also expressly stated that "Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (emphasis added). The "terms of [the United States'] consent to be sued in any court define the court's jurisdiction to entertain the suit." *Meyer*, 510 U.S. at 475, *citing*, *United States v. Sherwood*, 312 U.S. 584, 586 (1941). In fact, "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (emphasis added).

Congress has not waived its sovereign immunity to allow uniformed members of the armed forces to pursue discrimination claims under Title VII of the Civil Rights Act of 1964. Plaintiff is a uniformed member of the military. As a result, the plaintiff's claims, which are all premised on Title VII, must be dismissed.

Plaintiff is a member of the West Virginia Air National Guard which is part of the "armed forces" of the United States, and, thus, she is a member of the uniformed armed forces. The nature of her service requires her to maintain membership in both the WVNG and the United States Air

Force. The West Virginia Air National Guard is a reserve component of the United States Air Force and a component of the armed forces of the United States. *See* 10 U.S.C. § 101(c)(4), (5). *See also Gilligan v. Morgan*, 413 U.S. 1, 7 (1973) ("The Guard is an essential reserve component of the Armed Forces of the United States, available with regular forces in time of war."). In addition, the Plaintiff is a dual status technician of the WVNG.   That position supports military operations of the West Virginia Air National Guard. *See* 32 U.S.C. § 709(a) (stating that dual status technicians are appointed to support the "organizing, administering, instructing, or training of the National Guard" and to perform other functions in support of the operations and missions of her National Guard unit). As a dual-status technician, she is a uniformed member of the WVNG and must maintain membership in the WVNG to serve in her position as a dual-status technician. If the Plaintiff loses her membership in the WVNG then she will also lose her dual status technician position. Also, as a member of the WVNG, Plaintiff is required to maintain membership in the United States Air Force and adhere to its regulations. She is also required to wear the appropriate military uniform when working as a dual-status technician. *See* 32 U.S.C. § 709(b)(4) ("While performing duties as a military technician (dual status), wear the uniform appropriate for the member's grade and component of the armed forces.")[6]; Exhibit H. Thus, it is clear that the Plaintiff is a member of the uniformed armed forces. *See Perez v. Puerto Rico National Guard*, 951 F.Supp.2d 279, 293-94 (D.P.R. 2013).

The claims asserted in the complaint by the Plaintiff are based on alleged "violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*" *See* ECF No. 1 at ¶6 (page

---

6 Department of Defense Instruction 1205.18, paragraph 3.5(a)(5) states: "While performing duties as an MT (Military Technicians), wear the military uniform appropriate for the member's grade and component of the armed forces, conform to military grooming standards, and display proper military customs and courtesies."

2). These claims include allegations of sex discrimination and retaliation based on alleged violations of Title VII. *Id.* at pp. 12-19. Plaintiff claims that the alleged violations of Title VII occurred while she was on active duty in the National Guard and in her dual-status technician National Guard duty. *See* ECF No. 1.

The jurisdictional provision of Title VII is found in 42 U.S.C. § 2000e-16. That statutory provision prohibits discrimination based on race, color, religion, sex and national origin in certain federal government agencies, including "military departments"  42 U.S.C. § 2000e-16(a). However, the term "military departments" does not include uniformed members of the military. Rather, that term only includes ***only purely civilian employees*** employed by the "military departments." *See Randall v. United States*, 95 F.3d 339, 343 (4th Cir. 1996), *cert. denied,* 519 U.S. 1150 (1997) ("Under this distinction, the term "military departments" includes only civilian employees of the Army, Navy, or Air Force; while the term "armed forces" refers to uniformed military personnel." *citing Gonzalez v. Department of Army*, 718 F.2d 926, 928–29 (9th Cir. 1983)); *Fowler v. Perry*, 70 F.3d 111, at * 1 (4th Cir. Nov. 15, 1995) ("Title VII prohibits discrimination 'in personnel actions affecting employees or applicants for employment … in military departments.' 42 U.S.C.A. § 2000e-16(a)…All of the circuit courts which have considered the issue have concluded that this section only applies to civilian employees and not to uniformed members of the armed services.").

The Equal Employment Opportunity Commission (EEOC) has promulgated regulations which define the various forms of discrimination prohibited by Title VII and establish the procedure for enforcement of Title VII. The EEOC has made it clear that Title VII does not apply to uniformed members of the military:

(a) Individual and class complaints of employment discrimination and retaliation

prohibited by title VII … shall be processed in accordance with this part….

(b) This part applies to:

(1) Military departments as defined in 5 U.S.C. 102;

(2) Executive agencies as defined in 5 U.S.C. 105;

….

**(d) This part does not apply to:**

**(1) Uniformed members of the military departments referred to in paragraph**

**(b)(1) of this section….**

29 C.F.R. § 1614.103 (a), (b), and (d) (emphasis added).

The Fourth Circuit has held that the statutory language and legislative history of Title VII

and other relevant statutes make it clear that the legislative term "military departments" in Title

VII does not apply to uniformed members of the military such as the Plaintiff:

> Section 717 of Title VII,   42 U.S.C. § 2000e–16(a), provides, in relevant part, "All
> personnel actions affecting employees or applicants for employment ... in military
> departments as defined in   section 105 of Title 5 ... shall be made free from any
> discrimination based on race, color, religion, sex, or national origin." As the district
> court correctly recognized, every federal court of appeal that has **addressed the**
> **issue has held that Title VII does not apply to uniformed members of the**
> **military.** *E.g.,   Roper v. Department of Army*, 832 F.2d 247, 248 (2d Cir.1987);
> *Gonzalez v. Department of Army*, 718 F.2d 926, 928–29 (9th Cir.1983); *Johnson v.*
> *Alexander,* 572 F.2d 1219 (8th Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 579, 58
> L.Ed.2d 658 (1978); *see also Collins v. Secretary of Navy*, 814 F.Supp. 130
> (D.D.C.1993). *But see    Hill v. Berkman*, 635 F.Supp. 1228 (E.D.N.Y.1986)
> (holding that uniformed service member may bring sex discrimination suit under
> Title VII) (rejected by *Roper, supra* ). Those courts have recognized the difference
> between the definition of the term "military departments" as used in   42 U.S.C. §
> 2000e–16 and the term "armed forces." **Under this distinction, the term "military**
> **departments" includes only civilian employees of the Army, Navy, or Air**
> **Force; while the term "armed forces" refers to uniformed military personnel.**
> *Gonzalez*, 718 F.2d at 928. The court in *Gonzalez* reasoned that Congress

10

recognized the difference between the two terms when it drafted section 717 to apply specifically to "military departments." The *Gonzalez* court found support for its interpretation of section 717 in the legislative history of the statute. *Id.*

**This court agrees that Congress intended to include only civilian employees of the military departments, and not uniformed service members, within the reach of Title VII.** Therefore, the district court was correct in dismissing this count of Plaintiff's complaint under Fed.R.Civ.P. 12(b)(1) for want of subject matter jurisdiction.

*Randall v. United States*, 95 F.3d at 343. *See also Wetherill v. Green,* 616 F.3d 789, 794 (8th Cir. 20101) ("While the text of Title VII makes its strictures applicable to "employees ... in military departments," 42 U.S.C. § 2000e–16(a), that provision has generally been interpreted to apply only to civilian employees of the armed forces.")*; Middlebrooks v. Leavitt*, 525 F.3d 341, 344 (4th Cir. 2008), *cert. denied*, 555 U.S. 1013 (2008) ("numerous appellate courts, including this one, have concluded that uniformed members of the armed services do *not* constitute 'employees in military departments' *id.*, and so do not fall within the scope of the waiver of sovereign immunity contained in §2000e-16)") (footnote omitted) (emphasis in original); *Hedin v. Thompson*, 355 F.3d 746, 747-48 (4th Cir. 2004) (same); *Fowler v. Perry*, 70 F.3d 111 *1 (4th Cir. 1995) (unpublished opinion) ("All of the circuit courts which have considered the issue have concluded that [Title VII] applies only to civil employees and not to uniformed members of the armed forces.").

In this case, the Plaintiff is a member of the WVNG, thus making her a uniformed member of the armed forces, and her alleged Title VII claims arise out of activities incident to service. As a dual status technician, she is not a purely civilian employee of the military. In her role as a dual status technician, she has been appointed to support the "organizing, administering, instructing, or training of the National Guard" and to perform other functions in support of the operations and missions of her National Guard unit. 32 U.S.C. § 709(a). In addition, the Plaintiff is required to be

11

a member of the National Guard to hold her technician position, and she is required to wear a uniform and must be a member of the National Guard to her technician position. *See* 32 U.S.C. § 709(b). Quite simply, the Plaintiff cannot assert claims against the defendants under Title VII. *See Randall*, 95 F.3d at 343.   *See also Zuress v. Donley*, 606 F.3d 1249, 1255 (9th Cir. 2010) ("Indeed, Zuress points to nothing in the legislative history of the amendment that suggests Congress intended to waive the United States's sovereign immunity for Title VII suits by dual status military technicians. There is no mention of Title VII in the legislative history of the 1997 Amendments, nor is there any indication that Congress intended to authorize any cause of action that was previously unavailable to a dual status technician.").

While Title VII and federal courts are not available to the Plaintiff to pursue the claims she has asserted in her complaint, she is not without a potential remedy. Her remedy lies in the military processes and not in the federal courts. Dual-status technicians such as the Plaintiff may pursue discrimination claims through the Military Equal Opportunity Program or by filing complaints pursuant to Article 138 of the Uniform Code of Military justice. *See* 10 U.S.C. § 938; Department of Defense Directive 1350.2; National Guard Reg. 600-22. *See also Chappell v. Wallace*, 462 U.S. 296, 302 (1983) ("Congress has exercised its plenary constitutional authority over the military, has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure. The resulting system provides for the review and remedy of complaints and grievances such as those presented by respondents.") (discussing Article 138 of the Uniform Code of Military Justice, 10 U.S.C. § 938).

Thus, Plaintiff's claims in the complaint must be dismissed for lack of subject matter

jurisdiction since the Plaintiff, as a uniformed member of the military, is not covered by Title VII. Accordingly, the Defendants request that the Court dismiss this civil action based on the lack of subject matter jurisdiction.

### III.   PLAINTIFF'S TITLE VII AND EMPLOYMENT DISCRIMINATION CLAIMS ARE ALSO BARRED BY THE *FERES* DOCTRINE

#### A.   *Feres v. United States,* 340 U.S. 135 (1950) Bars Plaintiff's Title VII Claims

The Supreme Court has long recognized the doctrine of intra-military immunity, also commonly referenced as the *Feres* doctrine. Under this doctrine, uniformed military personnel may not bring suit against the armed forces or military superiors based on incidents arising out of or in the course of their military service. *See Feres v. United States*, 340 U.S. 135 (1950). While the doctrine of intra-military immunity was first applied in *Feres* to dismiss tort claims under the Federal Tort Claims Act (FTCA) arising out of incidents occurring in the course of military service, the Supreme Court has recognized that the doctrine also applies to claims of race discrimination arising from the course of military service. In *Chappell v. Wallace,* 462 U.S. 296 (1983), the Supreme Court held that constitutional claims by plaintiffs who alleged that they were discriminated against based on their race and which they alleged resulted in them not being assigned to more favorable duties, receiving low performance evaluations, received threats, and received penalties of unusual severity were barred by the *Feres* intra-military immunity. According to the Supreme Court, such claims should be addressed through intra-military procedures and the Uniform Code of Military Justice rather the courts. *See Chappell*, 462 U.S. at 301-04.

The Supreme Court emphasized in *Chappell* that the military has its own system of justice and that the courts are not to intrude on military decision-making unless Congress has specifically provided a remedy to do so:

The special status of the military has required, the Constitution contemplated, Congress has created and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel. *Burns v. Wilson, supra,* 346 U.S., at 140, 73 S.Ct., at 1047–1048. The special nature of military life—the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel—would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command. ***Here, as in Feres, we must be "concern[ed] with the disruption of '[t]he peculiar and special relationship of the soldier to his superiors' that might result if the soldier were allowed to hale his superiors into court,"*** *Stencel Aero Engineering Corp. v. United States, supra*, 431 U.S., at 676, 97 S.Ct., at 2060 (MARSHALL, J., dissenting), quoting *United States v. Brown, supra*, 348 U.S., at 112, 75 S.Ct., at 143.

***Also, Congress, the constitutionally authorized source of authority over the military system of justice, has not provided a damages remedy for claims by military personnel that constitutional rights have been violated by superior officers. Any action to provide a judicial response by way of such a remedy would be plainly inconsistent with Congress' authority in this field.***

Taken together, the unique disciplinary structure of the military establishment and Congress' activity in the field constitute "special factors" which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers. *See Bush v. Lucas, supra.*

*Chappell,* 462 U.S. at 303-04 (emphasis added).

The Fourth Circuit has also made it clear that courts are not to impose liability on incidents arising from military service unless Congress has created a specific remedy to address a specific situation:

***Second, we generally decline to expand liability for injuries arising from military service so as not to tread on the delicate balance of power among the branches of government. The Supreme Court has cautioned against interference with military disputes in the absence of explicit congressional approval.*** *See Dep't of Navy v. Egan*, 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) ("[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military ... affairs."); *Feres*, 340 U.S. at 146, 71 S.Ct. 153 (declining to draw out a cause of action against military personnel under the FTCA "absen[t] express congressional command").

*Aikens v. Ingram*, 811 F.3d 643, 650 (4th Cir. 2016) (emphasis added).

14

*Feres* has a very broad reach. As recently pointed out by the Fourth Circuit in *Clendening v. United States*, 19 F.4th 421 (4th Cir. 2021), *cert. denied*, 143 S.Ct. 11 (2022), the *Feres* doctrine bars claims for any injuries of military personnel that are even remotely related to their status as a military member:

> There is no "specific element-based or bright-line rule" for determining whether certain conduct was "incident to service." *Aikens v. Ingram*, 811 F.3d 643, 650 (4th Cir. 2016), *as amended* (Feb. 1, 2016) (citing *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)). Instead, we must ask whether "particular suits would call into question military discipline and decisionmaking [and would] require judicial inquiry into, and hence intrusion upon, military matters." *Cioca v. Rumsfeld*, 720 F.3d 505, 515 (4th Cir. 2013) (alteration in original) (quoting *United States v. Stanley*, 483 U.S. 669, 682, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987)). "Put another way, where a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's service in the military, the 'incident to service' test is implicated." *d.*

> **This test is admittedly "broad and amorphous." *Aikens,* 811 F.3d at 651. And this Court has remarked numerous times on the vast coverage of the Feres doctrine, stating that "in recent years the [Supreme] Court has embarked on a course dedicated to broadening the Feres doctrine to encompass, at a minimum, all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military." *Stewart v. United States*, 90 F.3d 102, 105 (4th Cir. 1996) (quoting *Major v. United States*, 835 F.2d 641, 644 (6th Cir. 1987)); see *Aikens,* 811 F.3d at 651.**

> Accordingly, the "focus" of the *Feres* doctrine "is not upon when the injury occurs or when the claim becomes actionable, rather it is concerned with when and under what circumstances the negligent act occurs." *Kendrick v. United States*, 877 F.2d 1201, 1203 (4th Cir. 1989). **While considerations such as the duty status of the service member, whether the injury took place on base, and what activity the service member was engaged in at the time are relevant, they are not always determinative. See *Aikens,* 811 F.3d at 651. Moreover, this test "does not inquire whether the discrete injuries to the victim were committed 'in support of the military mission.' " *Cioca,* 720 F.3d at 515.**

19 F.4th at 427-28 (footnotes omitted) (emphasis added).

The *Feres* intra-military immunity doctrine also applies to matters involving the National Guard. In *Aikens v. Ingram*, 811 F.3d 643 (4th Cir. 2016), the Fourth Circuit explained that the

*Feres* intra-military immunity doctrine applies to matters involving the National Guard and dual-status technicians, such as the Plaintiff in this case, serving in the National Guard either on active duty or in their regular duty as a member of the National Guard:

> ***That Appellant was a National Guardsman serving in a federal capacity does not change the result.*** It is true that when National Guardsmen are called to active duty, they "lose their status as members of the state militia...." *Perpich v. Department of Defense*, 496 U.S. 334, 347, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). ***Nonetheless, Feres has barred suit where a member of the state's National Guard, but also a dual-status federal technician, sued the state adjutant general under § 1983 for conduct occurring when he was serving in both capacities.*** *See Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 296 (5th Cir.2008); *see also Misko v. United States*, 453 F.Supp. 513, 514 (D.D.C.1978) ("[T]here is no longer any question that *Feres* applies with equal force to members of the National Guard whose injuries are incident to active military duty."). The Third Circuit has similarly explained that "concern for the disruption of the unique relationship of military personnel to their superiors and to other military personnel" could result "if one could hale another into court as a result of activity incident to military service." *Matreale v. N.J. Dep't of Military & Veterans Affairs*, 487 F.3d 150, 158 (3d Cir. 2007). ***And we agree this concern is "equally as compelling in the context of lawsuits brought by [full-time state duty] guardsmen ... as it is in the context of lawsuits brought by [federal active duty] guardsmen." Id.***

*Aikens*, 811 F.3d at 652 (emphasis added).

The courts have also been nearly unanimous in applying *Feres* to bar claims by dual status technicians:

> The *Feres* doctrine's bar to lawsuits that are "incident to military service" has generally been applied to suits by Guard Technicians arising while they are being paid as civilian employees. ***Despite the fact that their employment may be denominated civilian, the duties that they are performing are typically military in nature. Although the Supreme Court has not decided whether the Feres doctrine applies to a Guard Technician's lawsuit arising from his or her dual-status employment and brought against another Guard Technician, the state, or the federal government, the Circuit Courts of Appeals have: They have nearly unanimously applied the Feres doctrine to bar such suits.*** *See, e.g., Fisher v. Peters*, 249 F.3d 433, 443 (6th Cir. 2001) (applying the *Feres* doctrine to a Title VII action brought by a Guard Technician); *Brown v. United States*, 227 F.3d 295, 299 (5th Cir. 2000) (same). ***And they have done so even in cases in which the injuries complained of were incurred while the plaintiff was allegedly performing***

16

> ***the nominally civilian aspects of his or her employment.*** *See, e.g., Wright v. Park*, 5 F.3d 586, 589 (1st Cir. 1993) (applying the *Feres* doctrine to a  section 1983 action brought by a Guard Technician and allegedly related to his civilian duties); *Stauber*, 837 F.2d at 399 (applying the doctrine to a state tort law claim brought by a Guard Technician and allegedly related to his civilian duties);  *NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir.1980) (applying the doctrine to a  section 1983 claim brought by a Guard Technician and allegedly related to his civilian duties). *But see Mier*, 57 F.3d at 748 (9th Cir.1995) (stating that the Feres doctrine bars a Title VII claim by a Guard Technician only if the suit involves "personnel actions integrally related to the military's unique structure").

*Overton v. New York State Division of Military and Naval Affairs*, 373 F.3d 83, 91 (2d Cir. 2004) (footnote omitted) (emphasis added).

*Feres* bars claims, including Title VII claims, involving management and personnel decisions relating to dual status technicians. Dual status technicians, even though paid as a civilian employee, work in support of the mission that is ultimately military in nature and intruding into the nature of the employees' civilian and military duties could disrupt the military. *See United States v. Shearer*, 473 U.S. 52, 58 (1985) (dismissing claim under *Feres* that went "directly to the 'management' of the military" where "it calls into question basic choices about the discipline, supervision, and control of a serviceman.") (footnote omitted); *Neville v. Lipnic*, 778 Fed.Appx. 280 (5th Cir. June 28, 2019) (dual status technician's Title VII claims barred by *Feres*); *Wetherill*, 616 F.3d at 794 ("The courts of appeals have extended *Feres* to encompass Title VII claims by servicemembers against the military."); *Walch v. Adjutant General's Dept. of Texas*, 533 F.3d 289, 301 (5th Cir. 2008) ("Under these precedents, a court may not reconsider what a claimant's superiors did in the name of personnel management—demotions, determining performance level, reassignments to different jobs—because such decisions are integral to the military structure. Some of those decisions might on occasion be infected with the kinds of discrimination that Title VII seeks to correct, but in the military context the disruption of judicially examining each claim in

each case has been held to undermine other important concerns."); *Willis v. Roche*, 256 Fed.Appx. 534 *2 (Nov. 30, 2007) ("Apparently, every court of appeals considering the issue has held that the *Feres* doctrine bars uniformed military personnel from bringing discrimination claims under Title VII and other discrimination statutes."); *Overton v. New York State Div. of Military and Naval Affairs*, 373 F.3d 83 (2d Cir. 2004) (racial discrimination claims of dual status technician under Title VII involving racially offensive remarks, job assignments, and support were barred by *Feres*)

Here, Plaintiff's Title VII employment claims relating to the decisions to rescind the HRD position and to not select Plaintiff for the HRD and for the Employment Benefit position are barred by *Feres*. In both situations, the Court would be required to second-guess management and personnel decisions made by the WVNG. The WVNG examined its budgetary situation and determined that the HRD position had to be changed from a permanent position to an indefinite position. This decision involved consideration of the WVNG's financial resources to determine how to best allocate its resources to maintain its force. Management force decisions are protected by *Feres*. In addition, the decisions relating to the determination that the Plaintiff was not entitled to that position was based on the rules of the WVNG relating to the awarding of positions. Again, second-guessing how the WVNG applies these rules would be an improper intrusion into the management of personnel matters by the WVNG. *See Walch*, 533 F.3d at 301 ("[A] court may not reconsider what a claimant's superiors did in the name of personnel management—demotions, determining performance level, reassignments to different jobs—because such decisions are integral to the military structure."). *See also Filer v. Donley*, 690 F.3d 643, 649 (5th Cir. 2012) (*Feres* barred plaintiff's Title VII hostile work environment claim because judicial examination into personnel decisions would be disruptive to the military).

With regard to the Employee Benefits position, the analysis is essentially the same. The WVNG used an interview panel of three experienced human resource employees to conduct the interviews, all of the interviewees were questioned, and they determined which applicant was the most qualified based on their education, experience, and performance during the interviews. Again, the Court would be required to second-guess that selection decision and that would be disruptive of the procedures utilized by the WVNG to select employees in such positions. *See Walch*, 533 F.3d at 301 (claims regarding personnel decisions are barred by *Feres*).

Since Plaintiff is seeking to have this Court to second-guess personnel decisions relating to her employment in the WVNG, *Feres* and its progeny require that Plaintiff's Title VII claims regarding her non-selection to the HRD and Employee Benefits positions be dismissed. Otherwise, the Court would be improperly intruding on the management of personnel decisions by the WVNG.

**B.     *Feres Bars Plaintiff's Claim Relating To Her Performance Evaluation***

The courts have uniformly held that *Feres* bars claims relating to performance evaluations. *See Chappell,* 462 U.S. at 297, 304 (employment constitutional claims based on alleged low performance evaluations barred by *Feres*); *Walch*, 533 F.3d at 301 ("Under these precedents, a court may not reconsider what a claimant's superiors did in the name of personnel management…determining performance level….").

**C.     *Feres* Bars Plaintiff's Claims Relating To Statements Regarding Her Appearance And Sexual Orientation**

The Plaintiff's claims relating to comments made by Brig. Gen. Cadle and other employees of the WVNG regarding her sexual orientation are also barred by *Feres*.   Courts considering such claims have held that offensive remarks made by military personnel based on alleged constitutional

19

violations as well as Title VII are barred by *Feres*.   *See Doe v. Hagenbeck*, 970 F.3d 36 (2d Cir.

2017) (claims based on sexually explicit and offensive chants barred by *Feres* due to *Cioca v.

Rumsfeld*, 720 F.3d 505, 514 (4th Cir. 2013) (claims based on allegedly sexually-charged and

offensive statements held barred by *Feres* because the claims challenge the decisions made within

the ultimate chain of military command).

> **D.** *Feres* **Bars Plaintiff's Claims Relating To Her Hair Length And Appearance**

Plaintiff's claims of violations under Title VII based on statements regarding her hair

length and her uniform jacket are also barred by *Feres*. As Plaintiff has admitted, the WVNG has

military rules and regulations regarding a service member's appearance and their uniforms. The

Supreme Court and federal appellate courts have held that courts do not have authority to second

guess decisions by the military regarding these matters and the application and interpretation of

the military's rules on these issues. Thus, these claims are also barred by *Feres*. *See Miller v.

Newbauer*, 862 F.2d 771 (9th Cir. 1988) (*Feres* barred constitutional claim based in part on

issuance of AR-15 (nonjudicial punishment) for poor grooming standards). Moreover, the

military's imposition of a dress code and grooming standards are within the military's judgment

and not unconstitutional. *See also Goldman v. Weinberger*, 475 U.S. 503, 509 (1986) ("The

desirability of dress regulations in the military is decided by the appropriate military officials, and

they are under no constitutional mandate to abandon their considered professional judgment.");

*Gadberry v. Schlesinger*, 419 F.Supp. 949, 950-51 (E.D.Va. 1976), *aff'd*, 562 F.2d 46 (4th Cir.

1977) ("The Air Force has promulgated the aforementioned personal appearance standard to instill

in its members discipline and espirit de corps… Women are no more free to violate the standards

than are men. Employment and promotional opportunities, moreover, are not affected by the

personal appearance standards…The Air Force also desires to promote these qualities as its public image... The image the defendants wish to project is one that recognizes the differences in personal appearances between men and women which have traditionally existed in this country. The regulations for both men and women are reasonably calculated to achieving this end.").

      E.    ***Feres* Bars Plaintiff's Retaliation Claims**

Plaintiff claims that she was retaliated against because of the initiation of an inappropriate relationship or fraternization investigation into her relationship with LTC Ambrose. Such an investigation is a military investigation involving potential military discipline. *See* Article 134 of the Uniform Code of Military Justice; W.Va. Code § 15-1E-134. Courts have held that retaliation claims based on such investigations are barred by *Feres*. *See Aiken v. Ingram*, 811 F.3d 643 (4th Cir. 2016) (held that retaliation claim based on investigation of military member for inappropriate relationships with women barred by *Feres*); *Bowers v. Wynne*, 615 F.3d 455 (6th Cir. 2010) (*Feres* barred retaliation claims under Title VII based on investigation into fraternization and inappropriate relationships between subordinates and superiors "Thus, any investigation into the allegedly discriminatory and retaliatory actions by these officers necessarily threatens an intrusion into officer-subordinate relationships and the 'unique structure' of the military establishment."). Thus, Plaintiff's retaliation claim under Title VII should be dismissed as nonjusticiable under *Feres*.

    **IV.  EVEN IF THE PLAINTIFF HAS VIABLE CLAIMS UNDER TITLE VII, WHICH SHE DOES NOT, PLAINTIFF HAS FAILED TO MEET HER BURDEN OF PROOF UNDER TITLE VII**

The proof framework for establishing a Title VII violation was recently described in *Roberts v. Glenn Industrial Group*, 998 F.3d 111 (4th Cir. 2021):

To prevail under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case by showing that he "engaged in protected activity," that his employer "took an adverse action against [him]," and that "a causal relationship existed between the protected activity and the adverse employment activity." *Foster*, 787 F.3d at 250 (internal citation omitted);   *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). After a *prima facie* case is made, the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason. *Foster*, 787 F.3d at 250. If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination. *Id.*

998 F.3d at 122.

The Plaintiff has failed to meet this burden. First, she did not receive the HRD position because of potential budget issues which required the HRD position to be modified from a permanent position to an indefinite position which then required the position to be posted again with the modification. Moreover, Plaintiff never was approved for the HRD position because LTC Ambrose failed to submit the necessary forms of the approval of hiring Plaintiff for the position. There has been no dispute that LTC Ambrose failed to submit the necessary forms to have Plaintiff approved for the position. The submission of those forms was a requirement under the hiring rules of the WVNG. There is no evidence that Brig. Gen. Cadle played any role in the events surrounding the HRD situation. Let. Col. Board made the decision to modify the position due to budget issues. *See* Exhibits A; B; C; D; E; G; K (pp. 23-28); L (pp. 70-71).

Second, there is no evidence that Plaintiff was discriminated against based on her sexual orientation in the selection process relating to the Employee Benefits position. An interview panel interviewed 17 applicants, including the Plaintiff, and scored each of the applicants based on their background and performance during their respective interviews. Plaintiff ranked fourth out of the 17 applicants interviewed. The interview panel was unanimous in their selection of the top candidate. No one influenced the interview panel in their recommendation of the top candidate,

and neither the Plaintiff's nor any applicant's sexual orientation was considered in the interview and recommendation process. Also, Brig. Gen. Cadle played no role in the interview and recommendation process. He accepted the recommendation of the interview panel and supervising member of the unit. There is no evidence that Brig. Gen. Cadle attempted to influence the outcome of the interview process. Plaintiff did not interview as well as the top three candidates and answered some of the interview questions incorrectly according to the interview panel. Quite simply, the interview panel found that she was not the best qualified candidate.   The interview panel unanimously recommended another candidate for the position. *See* Exhibits A; B; C; D; E; G; K (pp. 33-35); L (pp. 70-71); N; O. Plaintiff has no proof That Brig. Gen. Cadle took any discriminatory action that affected the selection process for the position.   Exhibit J at pp 77-78. The decision and recommendation of the interview panel, even if subjective, is not evidence of discrimination. *See Mullins v. Mayor*, 2009 WL 248043, at *4 (D.Md. Jan. 20, 2009), *aff'd*, 368 Fed.Appx. 369 (4th Cir. Mar. 3, 2010) (employer still entitled to summary judgment, "Even assuming Ms. Mullins has made out a *prima facie* case, the City defendants have articulated a legitimate, nondiscriminatory reason for not selecting her for the supervisor position: the interview panel ranked her the lowest of all the candidates and ranked Mr. Brown, the ultimate choice for the position, the highest based on his experience, communication skills, and answers to the interview questions."). An employer may rely upon subjective criteria in making employment decisions, and it is not required that the person hired is more qualified than an employee--plaintiff. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981) (finding that the defendant need not "prove by objective evidence that the person hired or promoted was more qualified than the plaintiff."). *See also Anderson v. Westinghouse Savannah River Co.* v. 406 F.3d

248, 272 *rehearing and rehearing en banc denied*, 418 F.3d 393 (4th Cir. 2005), cert. denied, 546 U.S. 1214 (2006) (The court should not sit as a "super personnel department weighing the prudence of employment decisions" made by government agencies).

Although Plaintiff feels she was more qualified than the successful applicant for the Employee Benefits position, she does not know that applicant's qualifications or the qualifications of any of the other applicants. *See* Exhibit J at pp. 31, 54. Plaintiff's mere perception that she was better qualified than the selected applicant is not sufficient to meet her burden of proof under Title VII. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th 1989). A plaintiff's "unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers failed to disprove [the defendant's] explanation or show discrimination." *Evans v. Techs. App. & Serv, Co.*, 80 F.3d 954, 960 (4th Cir. 1996). *See also Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir.1988) (plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of discrimination" under Title VII).

While Plaintiff alleges that Brig. Gen. Cadle made certain discriminatory comments about her sexual orientation in the past, there is no evidence that Brig. Gen. Cadle or his alleged comments caused an adverse employment action against Plaintiff. Brig. Gen. Cadle had no role in the fraternization investigation involving the Plaintiff. *See* Exhibit L (pp. 69-70). Further, Plaintiff has not presented any proof that this investigation was in retaliation for her pursuit of a Title VII claim. There is no proof of causation linking the decision to rescind the HRD position, Plaintiff's non-selection for the Employee Benefits position, or the current fraternization investigation to any

discrimination. Since there is no proof of proximate cause between the alleged act of discrimination and Plaintiff's employment outcome, she has failed to meet her burden of proof under Title VII. *See Roberts*, 988 F.3d at 122-23.

Thus, even if Plaintiff can legally assert a claim under Title VII despite the fact that uniformed members of the military are not covered by Title VII and her alleged claims are barred by *Feres*, her alleged Title VII claims still fail. She cannot meet her burden of proof under Title VII and cannot prove that any alleged discriminatory conduct caused her to experience an adverse employment action.

## V.   PLAINTIFF HAS ASSERTED CLAIMS OUTSIDE THE SCOPE OF HER TITLE VII COMPLAINT

Plaintiff only asserted claims under Title VII for three alleged acts of discrimination during the investigation of her discrimination claim: (1) alleged statements made by Brig. Gen. Cadle to LTC Ambrose regarding the Plaintiff in December 2018; (2) her non-selection for the Employee Benefits position; and (3) the rescinding and reposting of the HRD position. *See* Exhibits G; M. To exhaust administrative remedies, a plaintiff must proceed with a claim through investigation. *See Newby v. Whitman,* 340 F. Supp.2d 637, 645 (M.D.N.C. 2004) *citing Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). A plaintiff does not exhaust administrative remedies for a claim that is not included in the letter of acceptance where the plaintiff failed to respond to the agency's framing of the claims. *See Cheatham v. Holder*, 935 F. Supp. 2d 225, 237 (D.D.C. 2013); *McKeithan v. Boarma*n, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (noting that "courts have generally held that failure to respond to the [agency's] framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO" (internal quotation marks and citations

25

omitted)); *Green v. Small*, No. 05-1055, 2006 WL 148740, at *5–7 (D.D.C. Jan. 19, 2006) (finding that a complainant abandons a claim that was alleged in a EEO complaint but not included in an agency's acceptance of claims letter where the complainant fails to respond to the agency's acceptance of claims letter). To the extent that Plaintiff is claiming any other acts of discrimination (her June 17, 2021 performance evaluation, claim of retaliation based on fraternization investigation, claim of discriminatory conduct and statements of other members of WVNG, the making of a female Dress Blue jacket for her, comments regarding her hair length, etc.), those claims are outside the scope of her EEO complaint. She has failed to exhaust her remedies regarding any such claims, and those claims should be dismissed.

## VI.   SOME OF PLAINTIFF'S TITLE VII CLAIMS ARE UNTIMELY

Under 29 C.F.R. § 1614.105(a), Plaintiff was required to initiate contact with an EEO counselor within 45 days of the alleged discrimination. Plaintiff initiated contact on October 19, 2020 by email. Plaintiff claims that she learned of allegedly discriminatory statements by Brig. Gen. Cadle in April 2019, and that she was informed that she would not be receiving the HRD position in May 2020. Her other allegations, except for her non-selection for the Employee Benefits position, also arise more than 45 days prior to October 19, 2020. *See* Exhibits F; J at pp. 38, 40, 44-50. Thus, her claims based on these events occurred more than 45 days prior to her initiating contact as required by 29 C.F.R. § 1614.105(a). Moreover, any claims relating to her June 17, 2021, performance evaluation and the fraternization investigation should also be denied as untimely since Plaintiff did not initiate EEO contact regarding those matters, and more than 45 days have transpired since those events occurred. Since those claims are also untimely, they should be denied by the Court. *See Murphy v. West*, 172 F.3d 863 *3 (4th Cir. Feb. 11, 1999) ("The record

contains no evidence from which we can conclude that Appellants, as a class, initiated contact with the EEO within 45 days of the alleged discriminatory conduct suffered by the class. We therefore find that Appellants failed to comply with the exhaustion procedures set forth in 29 C.F.R. § 1614.105(a)(1), and affirm the district court's dismissal of the class complaint on this basis.").

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff's claims in this civil action should be dismissed under Rules 12(b)(1), 12(b)(6), and/or 56 of the Federal Rules of Civil Procedure and applicable federal law. The Defendants respectfully request that judgment be entered in their favor and that this civil action should be dismissed.

Respectfully submitted,

**WILLIAM S. THOMPSON**
**United States Attorney**


**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
300 Virginia Street East, Room 4000
Charleston, WV   25301
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov
Counsel for Defendants Christine Wormuth, Secretary of the Department of the Army, and Frank Kendall, Secretary of the Department of the Air Force

## CERTIFICATE OF SERVICE

I, **FRED B. WESTFALL, JR.**, Assistant United States Attorney for the Southern District of West Virginia, hereby certify that on March 20, 2023, I electronically filed the **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF participants:

Michael B. Hissam (WVSB #11526)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 office
304-982-8056 fax
mhissam@hfdrlaw.com
Counsel for plaintiff


**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV   25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov

28