IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

KRISTIN M. KINGREY,

       Plaintiff,

v.                                                    Civil Action No. 2:21-cv-00612

CHRISTINE WORMUTH, SECRETARY
OF THE DEPARTMENT OF THE ARMY;
FRANK KENDALL, SECRETARY OF
THE DEPARTMENT OF THE AIR FORCE

       Defendants.

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

**I. PLAINTIFF'S CLAIMS UNDER TITLE VII MUST BE DISMISSED
BECAUSE THOSE CLAIMS AROSE WHILE SHE
WAS A UNIFORMED MEMBER OF THE MILITARY**

Plaintiff was an active duty uniformed member of the military from August 19, 2018, to December 4, 2020. While she was on medical continuation orders for part of that time, she was still considered to be on active duty (Title 10 orders), received active military pay, and was also considered an active duty uniformed member of the military during that time. She was also a member of the United States Air Force at all times relevant to the allegations in the Complaint. *See* Exhibit H (ECF No. 42-8) at p. 5; Exhibit J (ECF No. 42-10) at pp. 11-14,

Plaintiff applied for the HRD position and the Employee Benefits position while she was on active duty status and a uniformed member of the military. She applied for the HRD position in December 2018 and for the HRD position in September 2020. She was notified while she was on active duty status that she did not receive either position. *See* Exhibit J (ECF No. 42-10) at pp. 13-14, 26-28.

Plaintiff's claims regarding comments on her appearance and her military uniform also involve her uniformed military status. These claims are based on comments allegedly made regarding whether she had complied with military rules regarding her appearance and her uniform as a uniformed member of the military. *See* Exhibit J (ECF No. 42-10) at pp. 44-47. She was required to comply with certain military rules in that regard. *See* Exhibit H (ECF No. 42-8) at pp. 1-2, 6, 8.

Congress has not waived its sovereign immunity to allow uniformed members of the armed forces to pursue discrimination claims under Title VII of the Civil Rights Act of 1964. Plaintiff is a uniformed member of the military. As a result, the plaintiff's claims, which are all premised on Title VII, must be dismissed. Under 42 U.S.C. § 2000e-16 and 29 C.F.R. § 1614.103(d), Title VII does not apply to uniformed members of the military. Plaintiff was clearly a uniformed member of the military while she was on active duty status, and, thus, her claims involving the HRD position and Employee Benefits positions, as well as her claims regarding her appearance as a uniformed member of the military, must be dismissed. The Court has no jurisdiction over those claims. *See Randall v. United States*, 95 F.3d 339, 343 (4th Cir. 1996), *cert. denied,* 519 U.S. 1150 (1997) ("Under this distinction, the term "military departments" includes only civilian employees of the Army, Navy, or Air Force; while the term "armed forces" refers to uniformed military personnel." *citing Gonzalez v. Department of Army*, 718 F.2d 926, 928–29 (9th Cir. 1983)); *Fowler v. Perry*, 70 F.3d 111, at * 1 (4th Cir. Nov. 15, 1995) ("Title VII prohibits discrimination 'in personnel actions affecting employees or applicants for employment … in military departments.' 42 U.S.C.A. § 2000e-16(a)…All of the circuit courts which have considered the issue have concluded that this section only applies to civilian employees and not to uniformed members of

2

the armed services."). Accordingly, Plaintiff's Title VII claims should be dismissed.[1]

## II. PLAINTIFF'S CLAIMS ARE BARRED BY *FERES*

Plaintiff's argument that *Feres* should not apply to the Plaintiff's claims because she was a dual status technician acting in a civilian capacity is not factually accurate and without merit under federal law.[2] At the outset, it should be noted that Plaintiff was actually serving as a uniformed member of the military on active military duty, and not on duty serving as a dual status technician, from August 14, 2018 to December 4, 2020, when she applied for the HRD and Employee Benefit positions at issue in this case. *See* Exhibit H (ECF No. 42-8) at p. 5; Exhibit J (ECF No. 10) at pp. 11-14.[3]

---

[1]Plaintiff's reliance *on Babcock v. Kijakazi*, 142 S.Cr. 641 (2022), is misplaced in this case. In *Babcock*, the Supreme Court addressed the application of the windfall elimination provision under the Social Security Act to dual status military technicians. In addition, while the Supreme Court mentioned 42 U.S.C §2000e-1616, it did not hold or address whether Title VII applies to uniformed members of the military. The federal appellate courts that have addressed that issue have unanimously held that Title VII does not apply to uniformed members of the military. The binding precedent in the Fourth Circuit holds that Title VII does not apply to uniformed members of the military. *See Randall; Fowler*.

[2]Plaintiff relies on *Jentoft v. United States*, 450 F.3d 1342 (Fed.Cir. 2006) for the proposition that *Feres* should not apply due to the 1997 amendments to 10 U.S.C. § 10216. However, *Jentoft* was a case under the Age Discrimination in Employment Act (ADEA) and not under Title VII. In addition, every federal court of appeals considering the issue of the 1997 amendments other than the Federal Circuit in *Jentoft* have concluded that these amendments had no substantive effect on federal law, were designed to clean up some nomenclature in other statutory provisions, and did not preclude the application of *Feres* to bar Title VII claims. *See Wetherill v. Green,* 616 F.3d 789, 795-96 (8th Cir. 2010), *cert. denied*, 564 U.S. 1037 (2011); *Bowers v. Wynne*, 615 F.3d 455, 467-68 (6th Cir. 2010); *Zuress v. Donley*, 606 F.3d 1249, 1255 (9th Cir. 2010), *cert. denied*, 564 U.S. 1037 (2011); *Williams v. Wynne*, 533 F.3d 360, 367 (5th Cir. 2008); *Walch v. Adjutant General's Dept. of Texas*, 533 F.3d 289, 299-301 (5th Cir. 2008).

[3]Courts have recognized that *Feres* applies to claims by active and non-active duty personnel. *See Willis v. Roche*, 256 Fed.Appx. 534, 536 (3d Cir. 2007) ("The intra-military immunity doctrine has been extended well beyond its original application to FTCA claims by active duty military personnel, and now applies to a broad array of constitutional and statutory claims by active duty and non-active duty military personnel alike.).

Next, as the Fourth Circuit has recognized, *Feres* can bar suits by dual status technicians. *See Aikens v. Ingram*, 811 F.3d 643, 652 (4th Cir. 2016), *citing Walch v. Adjutant General's Dept. of Texas*, 533 F.3d 289, 296 (5th Cir. 2008). Dual status technicians are inextricably intertwined to their military service because their positions were created by Congress to support their respective military components. With regard "to National Guard technicians, we find that the military character of their service is extensive." *Walch,* 533 F.3d at 296. They must maintain their National Guard military membership in order to maintain their position as a dual status technician. Dual status technicians also must wear the uniform appropriate to their military grade and component of the armed forces while working as a dual status technician. Furthermore, dual status technicians are employed to support the military mission of their military component. They are hired to organize, administer, instruct, or train members of their military component; perform maintenance and repair of supplies issued to their military component, and perform other duties in support of their military mission. The work of dual status technicians is an integral part of their military mission. *See* 32 U.S.C. §§ 709(a), (b), (e).

The legislative history of the statute creating dual status technicians reinforces the importance of the tight knit relationship between the military roles and the technician roles of dual status technicians in support of their component's military mission. As stated in *American Federation of Government Employees AFL-CIO, Local 2953 v. Federal Labor Relations Authority*, 730 F.2d 1534 (D.C.Cir. 1984):

> All these excerpts from the legislative history show that while the principal purpose of the Technician Act was to provide fringe and retirement benefits to technicians, *the purpose of the technicians was to insure that the military mission of the National Guard* would be carried out effectively and efficiently. This "fundamental purpose," as Senator McIntyre put it, renders easy the search for the Act's "mandate." *That mandate is to preserve the Guard's military effectiveness and*

4

> *efficiency,* which is accomplished by the Act ensuring the Guard's ability to recruit and retain technicians qualified for both their civilian and military roles and preserving the command authority of the state adjutants general in personnel actions in general and reductions-in-force in particular. From this base, it follows quite clearly that since *military* preparedness is the *sine non qua* of the Technician Act, TPM 351 conforms to the mandate of the Act and serves a "compelling need" when it demands that both military evaluation and technician efficiency be considered when the Guard formulates retention registers. Any standard that subordinated or eliminated military proficiency in the ratings and evaluations for the RIF process would leave open the possibility that the "best" technicians—in military terms—would be retired during a RIF while the worst would remain….
>
> Such result is incompatible with sound defense planning of our military preparedness which must necessarily seek the highest combination of technician ability and military effectiveness.

*Id.* at 1545-46 (emphasis in original).

Due to the fact that the work of dual status technicians is so inextricably intertwined with the military mission of their military component, such as the WVNG, it is clear that any attempt to try to dissect and analyze the line between the civilian and military aspects of their work would undermine the military. To require such dissection would require second-guessing of the military which is specifically barred by *Feres*. *See Walch*, 533 F.3d at 297 ("A National Guard technician's employment is sufficiently intertwined with the military that litigation would cause the same improper intrusion."). *See also Martinez v. McCarthy*, 838 Fed.Appx. 611, 613 (2d Cir. 2020) ("As in *Overton*, another Title VII case involving a dual-status employee where we found that "[a]ny attempt surgically to dissect and analyze" the line between the civilian and the military "would itself threaten to intrude into [military affairs]," so too would an attempt at wielding a scalpel fail here."); *Willis,* 256 Fed.Appx. at 536 ("Apparently, every court of appeals considering the issue has held that the *Feres* doctrine bars uniformed military personnel from bringing discrimination claims under Title VII and other discrimination statutes.") (citing numerous cases); *Overton v.*

*New York State Div. of Military and Naval Affairs*, 373 F.3d 83, 96 (2d Cir. 2004) ("Because Overton's suit would likely intrude into and have an impact upon his military relationship with Fletcher, we conclude that Overton challenges conduct 'integrally related to the military's unique structure,' and that the relationships and behavior that are the subject of his suit were not 'purely civilian.' Overton therefore cannot pursue his Title VII claim in federal court.").

Despite Plaintiff's arguments to the contrary, Plaintiff's claims in this case are integrally related to the military's unique structure and/or incident to her military service in the WVNG. Plaintiff was on active military duty at the time she applied for the HRD position, and, thus, clearly a uniformed member of the military. *See* Exhibit H (ECF No. 42-8) at p. 5; Exhibit J (ECF No. 10) at pp. 11-14. Moreover, the issues relating to the HRD position involve the WVNG's rules regarding hiring and how positions are awarded. This position also involved the training of WVNG military personnel. The issues relating to the awarding of such a position by the WVNG involve the military hierarchy within the WVNG and the various steps and rules regarding how such a position is to be awarded. These steps and rules involve various approvals by military officers. Plaintiff was never awarded the position because LTC Ambrose never completed and signed a WV HRO Form 301 and a U.S. Office of Personnel Management Standard Form 52, Request For Personnel Action (SF 52), was never approved by the head of the agency. *See* Exhibits B; G; K (pp. 10, 19, 23-25, 32-33) (ECF Nos. 42-2, 42-7, 42-11). In addition, the budget decisions involving positions in the WVNG concern the allocation of the resources of the WVNG to best meet its military mission. Lt. Col. Board found that the HRD position had not been awarded and informed Plaintiff that the position would not be filled due to budget concerns and would have to be re-advertised since it was being changed from a permanent position to an indefinite position

6

due to budgetary considerations. Brig. Gen. Cadle played no role in this decision by Lt. Col. Board nor in the process of changing the position from a permanent position to an indefinite position. *See* Exhibits A, B; G; J (pp. 23-25); L (pp. 70-71) (ECF Nos. 42-1, 42-2, 42-7, 42-10, 42-12). These are precisely the type of decisions which *Feres* is designed to protect from second-guessing by the courts. They involve the application of military rules and regulations and decisions regarding personnel management and the allocation of military budget resources. *See United States v. Shearer*, 473 U.S. 52, 58 (1985) (dismissing claim under *Feres* that went "directly to the 'management' of the military"); *Walch.* 533 F.3d at 301 ("Under these precedents, a court may not reconsider what a claimant's superiors did in the name of personnel management—demotions, determining performance level, reassignments to different jobs—because such decisions are integral to the military structure.").[4]

The issues relating to the Employee Benefits position likewise involve issues related to the military's unique structure and/or incident to her military service in the WVNG. Again, the events involving the Employee Benefits position occurred while Plaintiff was on active military duty. *See* Exhibit H (ECF No. 42-8) at p. 5; Exhibit J (ECF No. 10) at pp. 11-14. The person awarded this position must have the required knowledge about handling employee benefit issues relating to military members of the WVNG. Plaintiff was interviewed by other members of the military, and their recommendation was subject to review by other military members of the WVNG. Such personnel decisions by the WVNG are protected from second-guessing by *Feres*, and, therefore, Plaintiff's Title VII claims are barred by *Feres*. *See Shearer*, 473 U.S. at 58; *Walch* 533 F.3d at

---

[4] The court in *Walch* (a case found persuasive by the Fourth Circuit) also held that held a number of personnel decisions were barred by *Feres*, including the decision to demote a dual status technician by one pay grade. 553 F.3d at 301.

301.

Plaintiff's claim regarding her performance evaluation by her military superiors also fails. While she claims that her performance evaluation was "mediocre," she was actually given an evaluation comprised of one outstanding rating, and two fully successful ratings for an overall fully successful rating. *See* Exhibit J (ECF No. 42-10) at pp. 72-73; Exhibit 9 to Exhibit J. The Supreme Court and other courts have held that discrimination claims based on performance evaluations are barred by *Feres* because such evaluations involve personnel decisions by military officers. *See Chappell v. Wallace*, 462 U.S. 296, 297, 304 (1983) (employment claims based on alleged low performance evaluations barred by *Feres*); *Walch*, 533 F.3d at 301 ("Under these precedents, a court may not reconsider what a claimant's superiors did in the name of personnel management…determining performance level….").

Plaintiff's retaliation claim is also foreclosed by *Feres*. Her retaliation claim is based on a fraternization investigation—a military investigation under the Uniform Code of Military Justice. Plaintiff's claim of retaliation based on this investigation is barred by *Feres*. *See Aiken v. Ingram,* 811 F.3d 643 (4th Cir. 2016) (held that retaliation claim based on investigation of military member for inappropriate relationships with women barred by Feres); *Bowers v. Wynne*, 615 F.3d 455 (6th Cir. 2010) (*Feres* barred retaliation claims under Title VII based on investigation into fraternization and inappropriate relationships between subordinates and superiors "Thus, any investigation into the allegedly discriminatory and retaliatory actions by these officers necessarily threatens an intrusion into officer-subordinate relationships and the 'unique structure' of the military establishment."). *See also Mier v. Owens*, 57 F.3d 747, 751 (9th Cir. 1995), *cert. denied*, 517 U.S. 1103 (1996) ("The retaliation claim cannot stand because the retaliatory acts are all

8

integrally related to the military's structure…Investigation is an act central to the military's unique concerns regarding discipline and control.").

Plaintiff's memorandum in opposition does not appear to address the fact that her claims relating to comments about the length of her hair and sexual orientation by other members of the military, the alleged comments by Brig. Gen. Cadle, and the issues regarding her military uniform in the Honor Guard activities (an undisputed military event) are barred by *Feres*. These claims should also be dismissed. *See Doe v. Hagenbeck*, 970 F.3d 36 (2d Cir. 2017) (claims based on sexually explicit and offensive chants barred by *Feres*); *Cioca v. Rumsfeld*, 720 F.3d 505, 514 (4th Cir. 2013) (claims based on allegedly sexually-charged and offensive statements held barred by *Feres* because the claims challenge the decisions made within the ultimate chain of military command); *Miller v. Newbauer,* 862 F.2d 771 (9th Cir. 1988) (*Feres* barred constitutional claim based in part on issuance of AR-15 (nonjudicial punishment) for poor grooming standards). *See also Goldman v. Weinberger*, 475 U.S. 503, 509 (1986) ("The desirability of dress regulations in the military is decided by the appropriate military officials, and they are under no constitutional mandate to abandon their considered professional judgment."); *Gadberry v. Schlesinger*, 419 F.Supp. 949, 950-51 (E.D.Va. 1976), *aff'd*, 562 F.2d 46 (4th Cir. 1977) ("The Air Force has promulgated the aforementioned personal appearance standard to instill in its members discipline and espirit de corps… Women are no more free to violate the standards than are men. Employment and promotional opportunities, moreover, are not affected by the personal appearance standards…The Air Force also desires to promote these qualities as its public image... The image the defendants wish to project is one that recognizes the differences in personal appearances between men and women which have traditionally existed in this country. The regulations for both

9

men and women are reasonably calculated to achieving this end.").

In summary, the decisions at issue in this case are integrally related to military structure, rules, regulations, discipline, and personnel management decisions. Plaintiff was never awarded the HRD position because her superior officer, LTC Ambrose, failed to complete the process to allow the Plaintiff to be awarded the position. Plaintiff has never alleged or proven that LTC Ambrose's actions were discriminatory. Budget issues came into play, and resources of the WVNG had to be reallocated which resulted in the HRD position being changed from a permanent position to an indefinite position. The HRD position had to be readvertised due to that change and because the position was never awarded. Lt. Col. Board's decisions on these issues were in accordance with the WVNG's military rules and procedures. The Defendants never "took" the Employee Benefits position from the Plaintiff. She was never awarded that position. In fact, she and sixteen other candidates were interviewed by other military members, and the Plaintiff placed fourth in the interviews because of her weak interview performance and failure to answer certain questions correctly. These types of decisions are precisely the types of decisions which are protected under *Feres,* and, therefore, Plaintiff's claims in this civil action should be dismissed as being non-justiciable under *Feres*.[5]

### III. PLAINTIFF HAS FAILED TO PROVE THAT THE DEFENDANTS ENGAGED IN AN ADVERSE EMPLOYMENT ACTION AGAINST THE PLAINTIFF BASED ON DISCRIMINATION IN VIOLATION OF TITLE VII

As the Fourth Circuit held in *Roberts v. Glenn Industrial Group*, 998 F.3d 111 (4th Cir.

---

[5] Plaintiff cited a number of cases to try to support her contention that *Feres* should not apply to bar her Title VII claims in this case. However, with the exception of *Laurent* which was an unpublished district court case, all of the other cases cited by the Plaintiff in Footnote 10 in her memorandum (ECF No. 48) held that *Feres* barred the Title VII claims asserted in those cases.

2021), a plaintiff in a Title VII case must prove that any alleged adverse employment action was caused by discrimination in violation of Title VII. *Id.* at 122. While Plaintiff alleges that Brig. Gen. Cadle somehow engaged in discrimination against her based on her sexual orientation with regard to various employment decisions with the HRD position and the Employee Benefits position, which he has specifically denied, she has failed to support those allegations with any factual proof. The failure to support these allegations with factual proof is fatal to her Title VII claims even if those claims could be pursued despite *Feres*. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th 1989). A plaintiff's "unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers failed to disprove [the defendant's] explanation or show discrimination." *Evans v. Techs. App. & Serv, Co.*, 80 F.3d 954, 960 (4th Cir. 1996). *See also Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of discrimination" under Title VII).

Plaintiff did not receive the HRD position because of potential budget issues. The HRD position was originally advertised as a permanent position which had significant budget consequences. LTC Ambrose never completed the process to have the position awarded to the Plaintiff. Quite simply, LTC Ambrose failed to submit the necessary forms to have the Plaintiff hired for the position, and the Plaintiff has not presented any evidence to the contrary. The submission of those forms was a requirement under the hiring rules of the WVNG. When the budget issue arose, it was clear that Plaintiff had not been hired for the HRD position. To help

11

alleviate budget issues, the HRD position had to be modified from a permanent position to an indefinite position. That lessened the impact of the position on the budget and required the position to be readvertised under WVNG rules. Lt. Col. Board made the decision to modify the position due to budget issues. There is no evidence that Brig. Gen. Cadle played any role in the events surrounding the modification of the HRD position or that he played any role in LTC Ambrose's failure to submit the necessary forms to have the Plaintiff hired as required by the hiring rules of the WVNG. Plaintiff was not hired for the HRD position as originally advertised because the hiring process was never completed due to LTC Ambrose's failure to follow WVNG rules and the intervening budget issues. *See* Exhibits A; B; C; D; E; G; K (pp. 23-28); L (pp. 70-71) (ECF Nos. 42-1, 42-2, 42-3, 42-4, 42-5, 42-7, 42-11, 42-12)..

Second, there is no evidence that Plaintiff was discriminated against based on her sexual orientation in the selection process relating to the Employee Benefits position. The interview panel interviewed 17 applicants, including the Plaintiff, and scored each of the applicants based on their background and performance during their respective interviews. The undisputed facts are that the Plaintiff was not the top candidate as the interview panel unanimously ranked Plaintiff fourth out of the 17 applicants interviewed. The Plaintiff failed to properly answer certain questions posed during the interview, and another individual was found to be a superior candidate by the unanimous choice of the interview panel. There is no evidence that anyone influenced the interview panel in their recommendation of the top candidate or that the Plaintiff's nor any applicant's sexual orientation was considered in the interview and recommendation process. Also, Brig. Gen. Cadle played no role in the interview and recommendation process. He accepted the recommendation of the interview panel and supervising member of the unit. There is no evidence that Brig. Gen. Cadle

attempted to influence the outcome of the interview process. Quite simply, the uncontroverted evidence is that the Plaintiff did not interview as well as the top three candidates, she answered some of the interview questions incorrectly according to the interview panel, and the interview panel found that she was not the best qualified candidate. Plaintiff has not presented any evidence that the decision of the interview panel was made in any discriminatory manner. *See* Exhibits A; B; C; D; E; G; K (pp. 33-35); L (pp. 70-71); N; O. (ECF Nos. 42-1, 42-2, 42-3, 42-4, 42-7, 42-12, 42-14, 42-15). Moreover, Plaintiff has not offered any factual proof that Brig. Gen. Cadle took any discriminatory action that affected the selection process for the position. Exhibit J (ECF No. 42-10) at pp 77-78.

The decision and recommendation of the interview panel, even if subjective, is not evidence of discrimination. *See Mullins v. Mayor*, 2009 WL 248043, at *4 (D.Md. Jan. 20, 2009), *aff'd*, 368 Fed.Appx. 369 (4th Cir. Mar. 3, 2010) (employer still entitled to summary judgment, "Even assuming Ms. Mullins has made out a *prima facie* case, the City defendants have articulated a legitimate, nondiscriminatory reason for not selecting her for the supervisor position: the interview panel ranked her the lowest of all the candidates and ranked Mr. Brown, the ultimate choice for the position, the highest based on his experience, communication skills, and answers to the interview questions."). An employer may rely upon subjective criteria in making employment decisions, and it is not required that the person hired is more qualified than an employee--plaintiff. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981) (finding that the defendant need not "prove by objective evidence that the person hired or promoted was more qualified than the plaintiff."). *See also Anderson v. Westinghouse Savannah River Co.* v. 406 F.3d 248, 272 *rehearing and rehearing en banc denied*, 418 F.3d 393 (4th Cir. 2005), *cert. denied*, 546

13

U.S. 1214 (2006) (The court should not sit as a "super personnel department weighing the prudence of employment decisions" made by government agencies). In this case, Lt. Col. Board concurred in the recommendation of the interview panel and forwarded the recommendation to Brig. Gen. William Crane who was authorized to and did approve the selection of the top candidate for the position on behalf of the Adjutant General. *See* Exhibits B, C, D, E, and N (ECF Nos. 42-2, 42-3, 42-4, 42-5, 42-14).

Plaintiff admitted in her deposition testimony that she does not know the successful applicant's qualifications or the qualifications of any of the other applicants interviewed for the Employee Benefits position. *See* Exhibit J (ECF No. 42-10) at pp. 31, 54. Plaintiff's argument that she was better qualified than the selected applicant is not sufficient to meet her burden of proof under Title VII. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th 1989). A plaintiff's "unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers failed to disprove [the defendant's] explanation or show discrimination." *Evans v. Techs. App. & Serv, Co.*, 80 F.3d 954, 960 (4th Cir. 1996). *See also Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of discrimination" under Title VII).

Plaintiff's contention that she should be able to assert a Title VII claim based on her work performance evaluation also fails. First, she did not receive a "mediocre" rating. No such rating exists in the WVNG evaluation system. Second, her actual rating was comprised of one outstanding rating, and two fully successful ratings for an overall fully successful rating. *See*

14

Exhibit J (ECF No. 42-10) at pp. 72-73; Exhibit 9 to Exhibit J. As Plaintiff admitted in her deposition, she had no basis or evidence that this evaluation was prepared based on discriminatory conduct:

> Q. Do you have any basis, any kind of evidence to show that this particular evaluation was based or was prepared based upon discriminatory conduct?
>
> A. No, sir, I don't.

Exhibit J (ECF No. 42-10) at p. 75.

In summary, while Plaintiff alleges that Brig. Gen. Cadle made certain discriminatory comments about her sexual orientation in the past, which he has specifically denied, there is no evidence that Brig. Gen. Cadle or his alleged comments caused an adverse employment action against Plaintiff. Furthermore, Brig. Gen. Cadle had no role in the fraternization investigation involving the Plaintiff, and Plaintiff has not presented any proof that this investigation was in retaliation for her pursuit of a Title VII claim. *See* Exhibit L (ECF No. 42-12) at pp. 69-70. There is no proof of causation linking the decision to rescind the HRD position, Plaintiff's non-selection for the Employee Benefits position, or the current fraternization investigation to any discrimination. Since there is no proof of proximate cause between the alleged act of discrimination and Plaintiff's employment outcome, she has failed to meet her burden of proof under Title VII. *See Roberts*, 988 F.3d at 122-23. Thus, even if Plaintiff can legally assert a claim under Title VII despite the fact that uniformed members of the military are not covered by Title VII and her alleged claims are barred by *Feres*, her alleged Title VII claims still fail. She cannot meet her burden of proof under Title VII because she has failed to prove that any alleged

discriminatory conduct caused her to experience an adverse employment action.

### IV. PLAINTIFF'S CLAIMS ASSERTED OUTSIDE THE SCOPE OF HER EEO COMPLAINT SHOULD BE DISMISSED

Only three specific alleged violations of Title VII were asserted by the Plaintiff in her EEO Complaint. She does not contest that she only listed three claims. Since only those three claims were raised, the other claims being asserted by her in this this civil action should be dismissed for failure to exhaust administrative remedies for those claims not contained in the EEO letter of acceptance. *See Newby v. Whitman,* 340 F.Supp.2d 637, 645 (M.D.N.C. 2004), *citing Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).   *See also Cheatham v. Holder*, 935 F. Supp. 2d 225, 237 (D.D.C. 2013); *McKeithan v. Boarma*n, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (noting that "courts have generally held that failure to respond to the [agency's] framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO" (internal quotation marks and citations omitted)); *Green v. Small*, No. 05-1055, 2006 WL 148740, at *5–7 (D.D.C. Jan. 19, 2006) (finding that a complainant abandons a claim that was alleged in a EEO complaint but not included in an agency's acceptance of claims letter where the complainant fails to respond to the agency's acceptance of claims letter).

### V. CONCLUSION

This Court not only lacks jurisdiction over Plaintiff's claims since Title VII is not applicable to her as a uniformed member of the military, but even if Title VII was applicable, Plaintiff's claims should still be dismissed under *Feres*. Further, she has asserted claims outside the scope of her EEO complaint, and those claims must be dismissed as well. Moreover, Plaintiff has failed to meet her burden of proof as she has not established that she has experienced any

16

adverse employment outcomes due to discrimination. Therefore, the Defendants respectfully request that Plaintiff's claims be dismissed and/or that they be granted summary judgment against all of the Plaintiff's claims asserted in this civil action.

Respectfully submitted,

**WILLIAM S. THOMPSON**
**United States Attorney**

**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
300 Virginia Street East, Room 4000
Charleston, WV   25301
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov
Counsel for Defendants Christine Wormuth, Secretary of the Department of the Army, and Frank Kendall, Secretary of the Department of the Air Force

### CERTIFICATE OF SERVICE

I, **FRED B. WESTFALL, JR.**, Assistant United States Attorney for the Southern District of West Virginia, hereby certify that on April 19, 2023, I electronically filed the **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF participants:

Michael B. Hissam (WVSB #11526)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 office
304-982-8056 fax
mhissam@hfdrlaw.com
Counsel for plaintiff

<u>s/Fred B. Westfall, Jr.</u>
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV 25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov